Louise Snyder, Plaintiff, *v.* Frank J. Snyder, Defendant.

(Supreme Court, Monroe Equity Term, January, 1917.)

Judgments — action for a separation — when wife entitled to judgment — evidence.

Where in a wife's action for a separation she testifies that she is willing to live with her husband apart from his mother, but insists that his acquiescence without objection or protest in the treatment she has received at the hands of his mother, together with his failure or refusal to take any steps to relieve her from it or its effects, entitles her to the decree sought, and the evidence amply sustains her version of the things of which she complains, she is entitled to judgment though from her appearance and her manner of testifying it is apparent that she is not altogether lacking in temper.

Where defendant, though without means of profitable employment, is in the early prime of life, well and strong, of good education and of more than usual intelligence and nothing but a disinclination to work interferes with his ability to earn a reasonable living for his wife and child, he will be directed to pay a certain sum weekly for their support with leave to either party to move at the foot of the judgment to change the amount at any time conditions shall seem to so require.

Action for a separation.

Charles E. Callahan, for plaintiff.

Chamberlain, Page & Chamberlain, for defendant.

SAWYER, J.   At the time of the marriage of these parties on October 21, 1909, defendant was employed as a shipping clerk in a shoe factory and later became a clerk in the Rochester post office.   He lost that position and during the past four years has had no employment other than helping his mother in and about her property and business of buying and selling antiques.   Following their marriage the parties lived by themselves for a time but when defendant lost his position they went to live at his mother's house. Thereafter they moved around at frequent intervals from apartment to apartment and from house to house owned by defendant's mother, some of the time living with her and again, for short intervals, by themselves. He received no salary from his mother but, in return for such services as he performed, she allowed them the use of a room and furnished them with food.   The arrangement was such that whether they were actually in the house with the mother, or were living by themselves in rooms owned by her, she was the dominant factor in their lives and the real head of the household.

Defendant and his mother seem to have had somewhat better social and financial position in life than did plaintiff who, before her marriage, and for a while after, was employed in factories and elsewhere. Whether for this, or for some other, or without any, reason, plaintiff was unfortunate enough to incur the dislike of her mother-in-law upon whom she had thus become dependent, with the result that she has for a number of years been subjected by the mother to a continuous course of unkind treatment evidently animated by that dislike and a desire to break up the little family, to the end that the mother might have the son to herself.   This treatment of his wife by his mother was well known to defendant who was frequently

requested by plaintiff to furnish a home for her separate and apart from his mother. This he refused to do, stating, in substance, that he would not work except for his mother and he would not live away from her. The husband not only so acquiesced in his mother's treatment of plaintiff, but manifested his constant sympathy with and approval thereof. He not only arrayed himself with his mother against her, but refused and neglected to provide for her necessities except for the roof over her head and the food which she ate, both furnished by his mother. The evidence shows that he gave her practically no money, bought her no clothes or shoes, refused to pay the doctor's bill for her confinement and that her hospital expenses would have remained unpaid had she not managed to earn sufficient money to pay them herself; and his child seems to have been maintained and cared for by him with but little more generosity.

So far as actual violence either of tongue or fist toward his wife is concerned plaintiff makes little complaint of her husband. She states frankly that she is not afraid to live with him and has never been afraid to live with him, and is now willing to go and live with him apart from his mother, but insists that his acquiescence without objection or protest in the treatment she has received at the hands of his mother, together with his failure or refusal to take any steps to relieve her from it or its effects, entitles her to the decree here sought.

The allegations of plaintiff are met by absolute denials of most of the acts of which she complains, and with more or less plausible explanations of those which are not actually denied. Defendant makes against her however charges tending to place responsibility for the marital discords upon the plaintiff herself. It seems

unnecessary to here recite the various acts and occurrences above summarized. It is sufficient to say that my conclusion is, that the evidence amply sustains plaintiff's version of the things of which she complains. Concerning the matters alleged against her, it is unquestionably true that she has, at times, not conducted herself with that calmness of demeanor and poise of judgment which defendant could have wished. It is apparent from her appearance and manner of giving her testimony that she is not altogether lacking in temper and that, whatever she may have been at the outset of her married life, she is now quite nervous and high strung. But this defendant married her as she was and if, by lack of consideration and indifference to her feelings, he has subjected her to a course of treatment well calculated to disturb the evenness of a disposition much more placid than hers, I do not see that he has any good ground for complaint at the logical outcome.

Defendant's counsel earnestly urges that plaintiff has not brought herself within the rule laid down in *De Meli* v. *De Meli,* 67 How. Pr. 20; affd., 120 N. Y. 485, and other decisions of like import. This may be so, but the later cases have brought the doctrine to rest upon a rule somewhat less strict and more humane than that earlier announced. " Cruel and inhuman treatment does not necessarily imply such treatment as places a wife in physical fear of the husband. The conduct of the husband may produce such mental agony in the wife as to be even more cruel and inhuman than if mere physical pain had been inflicted; and where the conduct of the husband toward the wife is of this character, it is certainly cruel and inhuman, and justifies the court in freeing her from the necessity of submission to such treatment." *Kissam* v. *Kissam,* 21 App. Div. 142, and cases cited at page 144.

Upon the facts here presented I think the plaintiff entitled to judgment. *Field* v. *Field,* 79 Misc. Rep. 557; *Mossa* v. *Mossa,* 123 App. Div. 400.

This defendant is without means and without profitable employment. He is, however, in the early prime of his life, well and strong, of good education and of more than usual intelligence.

Nothing but a disinclination to work seems to interfere with his ability to earn a reasonable living for his wife and child. This being so, suitable provision must be made for them at his expense.

Plaintiff is to have custody of the child, but defendant is to be permitted to either visit it or have it visit him as he may desire at reasonable intervals and at suitable times and places.

Defendant shall pay weekly the sum of eight dollars for the support of plaintiff and her child.

Either party may move at the foot of the judgment for a change in the amount so fixed if at any time conditions shall seem to so require.

Judgment in accordance with the foregoing is directed, with costs.

Judgment accordingly.